1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re SHARON E. WILSON,                    No. C 12-4337 CRB

12          Plaintiff,                **ORDER GRANTING IN PART
                                      COMMISSIONER'S CROSS-MOTION**
13      v.                            **FOR SUMMARY JUDGMENT AND
                                      REMANDING FOR FURTHER**
14  MICHAEL J. ASTRUE,                **PROCEEDINGS**
    Commissioner of Social Security,
15
            Defendant.
16  _____/

17

18          In this social security case, Plaintiff Sharon Wilson ("Ms. Wilson") seeks reversal of

19  the Commissioner of Social Security's decision finding her not disabled and ineligible for

20  disability benefits within the meaning of Title II and Title XVI of the Social Security Act.

21  See generally Plaintiff's Mot. for Summ. J. (dkt. 15) ("Wilson MSJ").  Defendant, Michael J.

22  Astrue ("Commissioner"), acting Commissioner of Social Security, filed a cross-motion for

23

24  summary judgment in opposition to Ms. Wilson's motion, seeking affirmation of the

25  Administrative Law Judge's ("ALJ's") final decision.  See generally Defendant's Cross-Mot.

26  for Summ. J. (dkt. 18) ("Opp'n").

27          As explained below, the Court GRANTS in part the Commissioner's cross-motion for

28  summary judgment and REMANDS.

**United States District Court**
For the Northern District of California

## I.      BACKGROUND

### A.      Ms. Wilson's Work History

Ms. Wilson is 54 years old, and a resident of Alameda County, California. Administrative Record ("AR") at 186, 217.  She graduated from high school in 1977 and completed two years of college by 1983.  Id. at 219.  Between 1990 and 2009, Ms. Wilson worked as a care provider (child care and home care).  Id. at 220.  She also worked as a laborer between 1993 and 1999, and as a waitress between 1999 and 2003.  Id. at 233.  Ms. Wilson originally failed to report two jobs during 2010, one as a child care provider, and the other as a phone bank operator.  Id. at 52.  Ms. Wilson did, however, try to supplement the record per the ALJ's request.[1]  Id. at 50-52.

### B.      Ms. Wilson's Mental Health History

At the request of the State agency, Ms. Wilson was examined by Faith Tobias, Ph.D. ("Dr. Tobias") on September 1, 2010.  AR at 383.  When questioned about psychiatric symptoms, Ms. Wilson reported "periodic depression, irritability, [] social isolation in reaction to her pain symptoms[,] . . . fatigue[,] . . . insomnia[] due to pain or frequent need to use the bathroom at night[, and] . . . [that] at times she is forgetful or distractible . . . ."  Id. Ms. Wilson denied having any suicidal ideation or any history of psychotic symptoms.  Id. When asked about her history of psychiatric treatment, Ms. Wilson "denied any history of mental health counseling," but reported that she had an appointment scheduled for September 3, 2010.  Id. at 384.  The ALJ, however, received no records related to that appointment.  Id.

---

[1] Even though Ms. Wilson timely sent a letter explaining her 2010 employment, it was not included in the ALJ's record.  AR at 50.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

at 21.  Ms. Wilson also reported that her primary service provider at Highland Hospital, Leslie Reynolds, P.A. ("Ms. Reynolds"), had prescribed her amitriptyline to treat her symptoms of depression and pain, but she denied any other psychiatric treatment.  Id. However, the ALJ noted that Ms. Reynolds did not list amitriptyline when she listed Ms. Wilson's medications in June 2011.  Id. at 21.  The ALJ also found no records prescribing depression medication(s) to Ms. Wilson.  Id.  Ms. Wilson points out that Ms. Reynolds did in fact prescribe her "Elavil," an amitriptyline based drug, in June 2010; however, the medical record did not make clear whether the prescription was for depression.  Id. at 446; Wilson MSJ at 7.

When questioned about substance abuse, Dr. Tobias noted that Ms. Wilson "denied any history of significant alcohol use."  Id. at 384.  She did, however, report occasional marijuana use, as well as "significant use of crack cocaine," including that the last time she smoked crack was two weeks before the appointment.  Id.  Ms. Wilson reported that she was able to complete "most activities of daily living," with restrictions only related to her physical impairments.  Id.  She was able to "wash and dress herself, prepare simple meals, do light household chores, do light shopping, take public transportation, and drive."  Id.  Her typical activities included "socializing with family and friends, doing errands, attending religious activities, attending doctors' appointments, watching TV, and taking naps."  Id.

Dr. Tobias then conducted a gamut of tests, in which he noted that Ms. Wilson was "polite, cooperative, and put forth good effort."  Id.  In terms of emotional/psychiatric functioning, Dr. Tobias stated that during his evaluation of Ms. Wilson, she had a full affect, her mood was pleasant, and she did "not appear significantly depressed, anxious, irritable, or

elated," Id. at 385.  Based on Ms. Wilson's clinical presentation, her reported history, and her symptoms, Dr. Tobias concluded that she was experiencing "mild and transient symptoms of depression and irritability that are appropriate to her situation." Id.  With regard to Ms. Wilson's cognitive functions, Dr. Tobias concluded she "had no significant cognitive deficits." Id. at 386.  Out of nine work-related abilities, Dr. Tobias estimated that Ms. Wilson had a "none" level of impairment as to six, and a "none to mild" level of impairment as to three.  Id.

Over two evaluation sessions on May 20 and May 25, 2011, Warren Taylor Ph.D. ("Dr. Taylor") examined Ms. Wilson at the request of Ms. Wilson's counsel.  Id. at 22, 459. Ms. Wilson told Dr. Taylor that she was "very depressed," that she would stay at home if she had no reason to leave, that she was feeling more anxious, and that she was "moderately angry." Id. at 460.  When asked about her sleeping, Ms. Wilson reported that she had a hard time sleeping at night, [] tended to "sleep in intervals," and took naps.  Id. at 461.  She also reported having little energy.  Id.  Dr. Taylor observed that Ms. Wilson was oriented, had a good memory, and was concentrated throughout most of the examination.  Id.  However, Dr. Taylor noted that Ms. Wilson's judgment was impaired, evidenced by her responses to certain hypothetical situations.  Id. at 462.

When asked about her mental health history, Ms. Wilson reported that she had no "history of any psychiatry hospitalizations," nor had she "had mental health treatment." Id. Ms. Wilson reported a history of physical assault by her "daughter's father," noting that 1988 was the last time she was physically assaulted.  Id.  In response to questions about drug and alcohol use, Ms. Wilson reported that she "had a half a pint of gin yesterday," but that she

4

United States District Court
For the Northern District of California

"never had a drinking problem." <u>Id.</u>  She also reported smoking marijuana the day before the evaluation, which she attributed to stress. <u>Id.</u>  Ms. Wilson admitted to using crack cocaine a week before the evaluation, and that she continued to use it three to four times a month. <u>Id.</u> She had "been using it off and on for the past 15 to 20 years." <u>Id.</u> at 462-63.  When asked if she had a problem with cocaine, she replied that she enjoyed it, and that it seemed to mellow her out. <u>Id.</u> at 463.  In regard to her daily activities, Ms. Wilson stated that she watched TV, attended an African-American HIV group a few times a month, and that she tried to go to an AIDS Project of the East Bay meeting every Friday. <u>Id.</u> at 464.  She also stated that her daughter and grandchildren helped her with household chores. <u>Id.</u>

Dr. Taylor conducted his own litany of psychological tests. <u>Id.</u> at 464-71.  Dr. Taylor then diagnosed Ms. Wilson with the following: major depressive disorder, generalized anxiety disorder, sleep disorder, cocain dependence, polysubstance dependence, bipolar I disorder, personality disorder NOS (schizoid and dependent personality traits, and depressive and sadistic personality features), physical impairments, difficulty interacting with others, and anger issues. <u>Id.</u> at 471.  Dr. Taylor expressed that it was unlikely Ms. Wilson would "be able to work on a regular and consistent basis within the next 12 to 18 months based on her severe psychopathology." <u>Id.</u>  Dr. Taylor stated that Ms. Wilson should be "referred for long-term psychotherapy." <u>Id.</u> at 472.  Applying the same nine work-related abilities that Dr. Tobias applied, Dr. Taylor concluded that Ms. Wilson had an "extreme" level of impairment as to three, "marked" as to three, "moderate" as to one, "slight" as to one, and "none" as to one. <u>Id.</u> at 473.  Dr. Taylor also determined that as to Ms. Wilson's substance use, "her substance dependence [was] <u>secondary</u> to her severe psychopathology," and that her "severe

psychopathology would persist whether or not she used cocaine or any other substance." Id. (emphasis in original).

### C.   Ms. Wilson's Physical Health History

Ms. Wilson was diagnosed with AIDS in May 2006. Id. at 227. In a May 2010 HIV questionnaire, Ms. Wilson, assisted by Ms. Reynolds, noted that she suffered from fatigue as a result of AIDS, and that she took three to four naps per day. Id. at 227, 232. Housework, driving, standing in lines, sitting too long, "almost anything" caused Ms. Wilson to experience fatigue. Id. at 227. She also had trouble sleeping and experienced night sweats, which exacerbated her fatigue. Id. at 228. She also experienced shortness of breath from walking, talking, and moving around. Id. at 229.

Ms. Wilson also endured back and hip pain. Id. at 416, 418, 432, 433, 441. An MRI of Ms. Wilson's hip was conducted in September 2009, and Dr. Azad Ghassemi noted "[m]ild to moderate osteoarthritic changes involving the posterior aspect of the hip joint on the right, where subchondral sclerosis and minimal bone marrow edema is present." Id. at 338. Ms. Wilson attended physical therapy for her hip in December 2009, and received a good prognosis. Id. at 438. In July 2010, Ms. Wilson underwent an MRI of her spine, which revealed "[d]extroscoliosis[,] [d]iffuse disc bulge at L3-4 and L4-5[,] [m]oderate facet arthropathy bilaterally at L3-4 and mild facet arthropathy bilaterally at L4-5[,] [m]oderate central spinal stenosis and bilateral neural foraminal stenosis at L3-4[, and] [m]ild central spinal stenosis and right neural foraminal stenosis at L4-5." Id. at 381. In October 2010, Stephanie Austin, M.D. ("Dr. Austin"), examined Ms. Wilson as to her "[s]evere lower back pain." Id. at 448. In explaining Ms. Wilson's history of back pain, Dr. Austin noted that Ms.

United States District Court
For the Northern District of California

Wilson's pain continued despite pain medication, she had a herniated disk, and she could not rotate her back sometimes "even to wipe her bottom after a bowel movement." Id. Moreover, "[t]he pain is in her right side in the butt and hips and goes down into her legs, the front part, her anterior leg and can sometimes shoot all the way down her toes." Id. After the examination, Dr. Austin offered Ms. Wilson the option of surgery or pain control. Id. at 449. Ms. Wilson opted for exercise and pain control. Id. Dr. Austin noted that it is unclear whether surgery would relieve Ms. Wilson's pain. Id.

Ms. Reynolds, Ms. Wilson's treating clinician, provided a narrative addendum to Ms. Wilson's medical chart in July 2011. Id. at 475. In conjunction with Howard Edelstein, M.D.[2] ("Dr. Edelstein"), Ms. Reynolds has cared for Ms. Wilson since May 2006. Id. Ms. Reynolds explained that Ms. Wilson's hip had caused her pain for more than four years, and that Ms. Wilson told Ms. Reynolds that she had to "stand near railings or other handholds, because her hip locks, and she ha[d] nearly fallen a number of times." Id. Ms. Reynolds noted that Ms. Wilson underwent an MRI of her hip in September 2009, which showed "subchondral sclerosis, mild bone marrow edema, and mild to moderate osteoarthritis." Id. Ms. Reynolds also recalled Ms. Wilson complaining of back pain since she began treating her in 2006. Id. Ms. Reynolds noted Ms. Wilson's July 2010 MRI of her back, and added that a September 2007 X-Ray of Ms. Wilson's lumbar spine "showed osteoarthiritis and dextroconvex scollosis." Id.

Ms. Reynolds observed that Ms. Wilson had difficulty sitting for extended periods of

---

[2] Although Dr. Edelstein co-signed Ms. Reynolds's narrative, there is no evidence that he ever treated or even saw Ms. Wilson.  AR at 28.

time, "and has to adjust often, and get up and walk around periodically due to the pain." Id.

Ms. Wilson reported that when walking she has to "stop and sit for ten minutes every one to

three blocks, to catch her breath" and rest. Id. Ms. Reynolds noted that Ms. Wilson has

some damage to her right lung that requires her to use an inhaler when she needs help

catching her breath. Id. at 476. Ms. Reynolds also documented Ms. Wilson's struggle with

fatigue, which Ms. Reynolds attributed "to a combination of the side effects of her

antiretroviral combination therapy and constant pain . . . ." Id. When Ms. Wilson arrived at

the clinic, Ms. Reynolds observed that she "usually appears visibly tired, and during the

course of an examination, her fatigue often worsens." Id. Because of her fatigue and pain,

Ms. Reynolds stated that Ms. Wilson spent most of her time indoors, and was unable to stand

for more than a few minutes, and as a result she "ha[d] great difficulty performing routine

daily activities, including cooking[], household chores and shopping." Id.

Ms. Reynolds discussed Ms. Wilson's history of substance abuse, and noted that Ms.

Wilson sporadically used cocaine and alcohol when Ms. Reynolds began treating her in

2006. Id. In August 2009, Ms. Wilson reported using cocaine twice a week, and in 2011

"[Ms. Wilson] report[ed] only sporadic episodes of cocaine use a few times a month." Id.

According to Ms. Reynolds, Ms. Wilson had always been candid with her treatment team

about her substance use. Id. Ms. Reynolds expressed that much of Ms. Wilson's substance

abuse "[was] secondary to the constant pain, fatigue, and stress that she experiences." Id.

Ms. Reynolds believed that Ms. Wilson's back and hip pain were not exacerbated by her

cocaine and alcohol use, and really, "her sporadic substance use may in part be a coping

mechanism for the physical pain." Id. If Ms. Wilson's substance use ended entirely,

**United States District Court**
For the Northern District of California

according to Ms. Reynolds, "she would still experience chronic low back and hip pain that would inhibit her ability to function." Id. Ms. Reynolds concluded that in her opinion, "Ms. Wilson [was] unable to work due to her physical limitations[,] . . . she would be unable to work an 8-hour day, focus for more than a few minutes on even a simple repetitive task, [] keep up with the pace of co-workers[,] . . . [or] perform even sedentary work on a consistent basis[, and] . . . I don't expect her condition to change in the foreseeable future." Id. at 477.

In April 2010, Philip Seu, M.D. ("Dr. Seu") examined Ms. Wilson at the request of the State agency. Id. at 362. Ms. Wilson reported a history of lower back pain and AIDS. Id. Her daily activities included basic household chores such as cooking and cleaning, but with frequent breaks. Id. Dr. Seu reported that Ms. Wilson smokes and uses alcohol. Id. at 363. Dr. Seu also observed that Ms. Wilson had no trouble "walking, sitting or standing[, but] [s]he did have some difficulty getting up from a supine position due to back discomfort." Id. Dr. Seu noted that Ms. Wilson "had mild lower back tenderness but had full range of motion." Id. at 364. In his final functional assessment, Dr. Seu reported that Ms. Wilson should be able to stand or walk for up to six hours in an eight-hour workday, she should be able to sit for up to eight hours, she should be able to lift and carry twenty pounds occasionally and ten pounds frequently with some limitations due to lower back tenderness, she would have difficulty bending often, and she has no workplace environmental limitations. Id. at 365.

Minh Vu, M.D. ("Dr. Vu"), testified in front of the ALJ. Id. at 66. Dr. Vu based his opinion on the consultative clinical exam conducted by Dr. Seu, as well as MRIs and X-Rays. Id. at 75. Dr. Vu also consulted the findings of Ms. Reynolds, but accorded them little

9

weight because they were not supported by clinical findings.  Id. at 74-75.  Dr. Vu testified that Ms. Wilson had the following impairments: AIDS, back pain, cervical disc problems, hip problems, mild osteoarthritis, and hypertension.  Id. at 67-69.  When asked by the ALJ which impairment or combination of impairments met the threshold for severity, Dr. Vu stated that they all met the proper level of severity.  Id. at 70.  In Dr. Vu's opinion, however, even in combination, the impairments did not equal any listing.  Id.  Dr. Vu did note that Ms. Wilson's impairments would impose restrictions on her residual functional capacity ("RFC"), but he concluded that Ms. Wilson could lift fifty pounds occasionally and ten pounds frequently.  Id.  Dr. Vu further concluded that Ms. Wilson had no limitation on the upper and lower extremities, except to limit work above shoulder level and laterally to "frequently."  Id. at 70-71.

### D. Procedural History

Ms. Wilson filed an application for supplemental security income on Jan. 14, 2010, with an alleged onset date of October 1, 2009.  Id. at 17.  The Social Security Administration denied both her initial application on May 20, 2010 and her request for reconsideration on October 19, 2010.  Id.  Ms. Wilson then filed a timely written request for a hearing on November 8, 2010, which took place on July 27, 2011 in Oakland, CA in front of ALJ Richard P. Laverdure.  Id. at 16-17.  On October 17, 2011, the ALJ issued an unfavorable decision against Ms. Wilson, finding her not disabled within the meaning of the Social Security Act and ineligible for disability benefits .  Id. at 31.  Ms. Wilson timely requested an Appeals Council review on December 27, 2011.  Id. at 10.  The Appeals Council denied the review on June 18, 2012.  Id. at 1.  After the denial, Ms. Wilson commenced this action for

**United States District Court**
For the Northern District of California

1    judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

2    **II.      LEGAL STANDARD**

3         **A.       Standard for Judicial Review of Commissioner's Final Decision**

4

5         The district court "reviews the Commissioner's final decision for substantial evidence,

6    and the Commissioner's decision will be disturbed only if it is not supported by substantial

7    evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012)

8    (citing 42 U.S.C. § 405(g)).  "Substantial evidence" is more than a mere scintilla, but less

9    than a preponderance.  Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  It is "such

10   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11   Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S.

12   389, 401 (1971)).

13

14

15        The district court must consider the record as a whole, including evidence that

16   supports and detracts from the Commissioner's conclusion.  Frost v. Barnhart, 314 F.3d 359,

17   367 (9th Cir. 2002) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)).  The court

18   may not affirm the Commissioner's decision "simply by isolating a specific quantum of

19   supporting evidence."  Id.  And, "[w]here the evidence can reasonably support either

20   affirming or reversing the [Commissioner's] decision," the court may not substitute its

21   judgment for that of the Commissioner on review.  Parra v. Astrue, 481 F.3d 742, 746 (9th

22   Cir. 2007).

23

24        Summary judgment is a method for disposing of an action in which there is no

25   genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

26   See Fed. R. Civ. P. 56.  The burden of establishing the lack of a genuine issue of material

27

28

United States District Court
For the Northern District of California

1   fact is on the moving party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  An issue

2   is "genuine" only if a reasonable fact finder would find the evidence sufficient to find for the

3   nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  A fact is

4   "material" if it could affect the outcome of the case.  <u>See id.</u> at 248.  All inferences drawn

5   must be viewed in the light most favorable to the nonmoving party.  <u>T.W. Elec. Serv., Inc. v.</u>

6   <u>Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

7

8           **B.      Disability Determination Standard**

9           A person is "disabled" for purposes of receiving supplemental security income

10  ("SSI") if he or she is unable to engage in substantially gainful activity ("SGA") due to a

11  physical or mental impairment that has lasted for a continuous period of not less than twelve

12  months.  42 U.S.C. § 423(d)(1)(A).  The ALJ evaluates a disability claim using a five-step

13  sequential process.  <u>See</u> 20 C.F.R § 416.920(a)(4).  In the first step, the ALJ must determine

14  whether the claimant is currently engaged in SGA.  20 C.F.R. § 416.920(a)(4)(i).  If the

15  claimant is not so engaged, the second step requires the ALJ to determine whether the

16  claimant has a "severe" impairment which significantly limits his or her ability to perform

17  basic work activities.  20 C.F.R. § 416.920(a)(4)(ii).  If the ALJ concludes that the claimant

18  does not have a "severe" impairment, the claimant is not "disabled" and the claim is denied.

19  <u>Id.</u>

20          If the claimant has a "severe" impairment, the third step requires the ALJ to determine

21  whether the impairment meets or equals the criteria of an impairment listed in the relevant

22  regulation.  20 C.F.R. § 404, Subpart P, App'x 1; 20 C.F.R. § 416.920(a)(4)(iii).  If the

23  claimant does not meet or equal the criteria of a listed impairment, the fourth step requires

24

25

26

27

28

the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his or her past work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant has sufficient RFC to perform his or her past work, the claimant is not "disabled" and the claim must be denied.  Id.  If not, then at the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other substantially gainful work.  20 C.F.R. § 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, the claimant must be found disabled.  Id.

### C.  Credibility Determination Standard

"The ALJ is responsible for determining credibility . . . ."  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ's credibility findings must be supported by specific, cogent reasons.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

When weighing the credibility of a claimant's testimony regarding his or her subjective pain, the ALJ must engage in a two-step analysis.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).  "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Id.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Berry v. Astrue, 622

13

United States District Court
For the Northern District of California

F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted).  When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, prior inconsistent statements, other testimony that seems less than candid, inadequately explained failures to seek treatment, the claimant's daily activities and work record, as well as the claimant's physician's testimony concerning the nature, severity, and effect of the symptoms of which the claimant complains. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

### D.    Substance Abuse Standard

In determining whether a claimant's alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is whether an individual would still be found disabled if he or she stopped using alcohol or drugs. See 20 C.F.R. §§ 404.1535(b), 416.935(b); Parra, 481 F.3d at 746-47.  A claimant will not be deemed "disabled" if alcoholism is a "contributing factor material to the Commissioner's determination of disability." 42 U.S.C. § 423(d)(2)(C).  "In making this determination, [the Commissioner] will evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

If the Commissioner determines that the claimant's remaining limitations would not be disabling, then the Commissioner must find that the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. See 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).  If the Commissioner determines that the claimant's remaining limitations are disabling, then the Commissioner must find that the claimant is

disabled, independent of his or her drug addiction or alcoholism, and that the claimant's

addiction or alcoholism is not a contributing factor material to the determination of disability.

See 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

### E.    Summary of the ALJ's Findings

The ALJ first found that Ms. Wilson had not engaged in substantial gainful activity

since she filed her disability application.  AR at 19.  The ALJ next found that Ms. Wilson

suffered from the severe impairments of AIDS, cervical disc stenosis, lumbar degenerative

disc disease, mild osteoarthritis of the right hip, obesity, a major depressive disorder, a

generalized anxiety disorder, and ongoing polysubstance abuse.  Id. at 20.  The ALJ

determined that Ms. Wilson's mental impairments, combined with her substance abuse, met

the requirements of "listed" disabilities under the third step of the SSA's five step

determination process.  Id. at 20-21.  However, with regard to Ms. Wilson's mental

impairments, the ALJ held that Ms. Wilson failed to prove that she would still be impaired

without substance abuse.  Id. at 21.  In so doing, the ALJ accorded greater weight to Dr.

Tobias's opinion than that of Dr. Taylor, and noted that because Ms. Wilson had not been

clean and sober for "any relevant period of time, any opinion about how she functions in the

absence of substance abuse is pure speculation."  Id. at 22.

Analyzing Ms. Wilson's physical impairments, like the mental impairments, the ALJ

determined that "[i]f the claimant ceased substance use, she would not have an impairment or

combination of impairments that meets or medically equals any of the impairments listed"

under the relevant regulation.  Id. at 23.  In reaching his conclusion, the ALJ accorded the

greatest weight to Dr. Vu's opinion "because it [was] consistent with the longitudinal

medical record, he . . . review[ed] [] the entire record, . . . and he is familiar with the Social Security program requirements." Id. at 28.  The ALJ gave little weight to Ms. Reynolds's opinion because it was not supported by "medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with other substantial evidence in the record."  Id. at 29.

Proceeding to the fourth step, the ALJ determined that in the absence of substance abuse, Plaintiff had the RFC to perform a full range of light work, including her past relevant work as a nursery school attendant.  Id. at 24, 29.  In reaching his conclusion, the ALJ weighed the medical testimony of Ms. Reynolds, Dr. Seu, Dr. Vu, and Dr. Austin.  Id. at 24-29.  The ALJ also found Ms. Wilson's pain testimony not credible given discrepancies in her work history and her known substance abuse.  Id. at 24.  Thus, because Ms. Wilson could perform her past relevant work, the ALJ held that Ms. Wilson was not disabled.  Id. at 30.  In the alternative, the ALJ proved that under the fifth step, "considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform . . . ."  Id.  Under the fifth step, the ALJ also found that Ms. Wilson was not disabled.  Id. at 31.

Therefore, the ALJ held that "[t]he substance abuse disorder is a contributing factor material to the determination of disability because the claimant has not proven that she would be disabled if she ceased substance use [citation].  Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed though the date of this decision."  Id.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    DISCUSSION

Ms. Wilson asks the Court to reverse the ALJ's denial of disability for four reasons: (1) the ALJ erred in evaluating Ms. Wilson's credibility; (2) the ALJ erred in finding that drug and alcohol abuse was a contributing factor material to the determination of a disability; (3) the ALJ erred in failing to consider the combined effect of both Ms. Wilson's mental and physical impairments; and (4) the ALJ erred in assessing Ms. Wilson's residual functional capacity.  See generally Wilson MSJ; Reply.

For the following reasons, the Court GRANTS the Commissioner's cross-motion for summary judgment in part and REMANDS as to the remainder of the issues.

### A.    The ALJ Erred in Finding Ms. Wilson Not Credible.

In the absence of evidence of malingering, an ALJ must have "clear and convincing reasons" for determining that a claimant's testimony regarding subjective symptoms or pain is not credible.  See Lingenfelter, 504 F.3d at 1036.  The ALJ here found Ms. Wilson not credible based on two findings: (1) she continues to use substances and "gave inconsistent statements regarding her substance abuse;" and (2) she "gave inconsistent testimony regarding her past work."  Opp'n at 6.  The ALJ's reasons do not constitute clear and convincing reasons, thus he erred in finding Ms. Wilson not credible.

Determining a claimant's credibility requires a two-step process.  Lingenfelter, 504 F.3d at 1035-36.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an impairment that could cause the symptoms or pain alleged.  Id. at 1036.  Second, if step one is met and absent malingering, the ALJ can only find the claimant

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

not credible by offering clear and convincing reasons for doing so.[3]  Id.  As the

Commissioner did not challenge whether Ms. Wilson met the first step, and Ms. Wilson need

only produce medical evidence of an underlying impairment that "could have caused some

degree of the symptom [or pain]," the first step is met.  Id.; see also Berry, 622 F.3d at 1234.

Thus, the ALJ's credibility determination hinges on the second step.

The ALJ relied upon Ms. Wilson's continued substance use and inconsistent

statements regarding her substance use.  AR at 29; Opp'n at 6.  With regard to the former

reason, the ALJ simply concluded that Ms. Wilson continued to abuse substances, "none of

which can possibility have a positive effect on her ability to function."  AR at 29.  Without

providing further explanation as to why Ms. Wilson's continued substance use undermined

her credibility, the ALJ's conclusion is not a clear and convincing justification for his

finding.  With regard to the latter reason, while Ms. Wilson did state at different times that

she did not have a drinking problem, AR at 384, 462, Ms. Wilson was consistently forthright

regarding the details of her alcohol and other substance use to her physicians.  Id. at 363,

384, 431, 461, 462, 476, 484.  The Commissioner's reliance on Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 884 (9th Cir. 2006) is also misplaced.  The court in Robbins held that a single

line of contradictory testimony regarding alcohol dependence "cannot justify [an unfavorable

credibility finding] alone without further corroboration or explanation."  Id.  Therefore,

---

[3] Initially, the Commissioner misstated the proper standard in his opposition, stating that the ALJ's credibility finding "must be properly supported by the record and sufficiently specific to ensure" that the ALJ did not arbitrarily discredit the claimant's testimony.  See Opp'n at 6 (citing Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (Although this case uses the language "sufficiently specific," it goes on to rely upon the "clear and convincing" standard in its analysis).  The correct standard is the higher clear and convincing standard.  See, e.g., Lingenfelter, 504 F.3d at 1035-36; Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

United States District Court
For the Northern District of California

without any evidence of malingering, the ALJ did not provide clear and convincing reasons why Ms. Wilson's continued substance use and her few inconsistencies regarding alcohol use establish an unfavorable credibility finding.

The ALJ also relied on Ms. Wilson's inconsistent testimony regarding her past work. AR at 29; Opp'n at 6. Specifically, the ALJ noted that Ms. Wilson failed to pay taxes on cash income between October 1999 and May 2003 and that she misstated her earned income in 2010. AR at 29. In regard to the unpaid taxes, Ms. Wilson testified in front of the ALJ that she did not file income tax returns because she did not make enough money. AR at 97. Furthermore, Ms. Wilson attempted to supplement the record with a letter explaining the 2010 earnings discrepancy, however the letter was never added to the ALJ's record despite being timely filed. Id. at 50. In light of what should have been the full record, and Ms. Wilson's testimony, these alleged discrepancies do not meet the clear and convincing standard.

Lastly, in his findings, the ALJ listed the credibility factors as set forth in the regulation with which he is supposed to consider Ms. Wilson's subjective statements. Id. at 29 (quoting 20 C.F.R. 416.929). The ALJ, however, failed to address any of the factors, and instead focused on Ms. Wilson's substance abuse and her work history. Id. at 29. Without the ALJ analyzing any of the regulation's factors, and without the ALJ providing clear and convincing reasons why Ms. Wilson's substance abuse and work history undermine her credibility, the Court holds that the ALJ erred in his analysis as to Ms. Wilson's credibility. Therefore, the Court REMANDS this portion of the ALJ's decision for further proceedings consistent with this section.

United States District Court
For the Northern District of California

**B.     The ALJ Did Not Err in Finding That as to Ms. Wilson's Mental Impairments, Substance Use Was a Contributing Factor Material to the Determination of Her Disability.**

Substantial evidence supports the ALJ's finding that "without substance abuse[] . . . [Ms. Wilson] has not proven that she would continue to have a severe mental impairment or combination of mental impairments."  AR at 21.  In enacting 42 U.S.C. § 423(d)(2)(C), Congress intended to deny social security benefits to claimants whose alcoholism or drug addiction was a contributing factor material to the claimant's disability.  See § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would [] be a contributing factor material to the Commissioner's determination that the individual is disabled.").  The "key factor" the ALJ "will examine in determining whether [substance abuse] is a contributing factor material to the determination of disability is whether [the ALJ] would still find [the claimant] disabled if [the claimant] stopped using [substances]."  20 C.F.R. § 416.935(b)(1).  To make that determination, the ALJ evaluates which of the claimant's mental or physical impairments would remain, and still be disabling, absent the substance abuse.  See id. § 416.935(b)(2). "The claimant," moreover, "bears the burden of proving that drug or alcohol addiction is not a contributing factor material to [their] disability."  Parra, 481 F.3d at 748.  The ALJ found that Ms. Wilson did not meet her burden of proving that her substance abuse was not a contributing factor material to her disability.  AR at 23.  Accordingly, the ALJ held that absent substance abuse, Ms. Wilson's mental impairments do not meet or medically equal any listed impairments.  Id.

"The ALJ is responsible for . . . resolving conflicts in medical testimony."

20

United States District Court
For the Northern District of California

Magallanes, 881 F.2d at 750.  The ALJ accorded greater weight to the evaluation and

medical opinion of Dr. Tobias than of Dr. Taylor.  AR at 22.  Medical opinions must come

from "phsyicians[,] psychologists[,] or other acceptable medical sources."  20 C.F.R.

§ 404.1527(a)(2).  "There are three types of medical opinions," each of which is accorded

different weight: "those from treating physicians, examining physicians, and non-examining

physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).  An

examining physician's opinion is given more weight than the opinion of a non-examining

physician, while a treating physician's opinion is generally given the most weight.  See

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  For an ALJ to reject the opinion of an

examining physician because it is contradicted by another doctor, the ALJ must provide

specific, legitimate reasons based on substantial evidence in the record.  Id.  Moreover, when

medical opinions conflict, the ALJ solely retains the function of resolving that conflict.  See

Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Here,

examining physicians Dr. Tobias and Dr. Taylor produced contradicting medical opinions

regarding Ms. Wilson's mental health and her substance abuse.  Therefore, the ALJ was

tasked with resolving that conflict, which he did citing substantial evidence.[4]

The ALJ gave greater weight to Dr. Tobias's opinion, first, because it was "more

consistent with the longitudinal medical record."  AR at 22; see 20 C.F.R. § 416.927(c)(4).

Specifically, the ALJ stated that the "record has no evidence of mental health treatment,

counseling, therapy, or medications."  AR at 22.  Ms. Wilson contested the ALJ's assertion,

---

[4] The existence of Ms. Wilson's substance use, as a threshold matter, is uncontested by the parties. Ms. Wilson has been forthright regarding her use of alcohol, marijuana, and cocaine. See, e.g., AR at 363, 384, 461, 462, 476.

pointing out that she was prescribed "Elavil,"[5] and her primary care providers have documented her depression.[6]  Wilson MSJ at 19; AR at 232, 446.  While the ALJ's statement might have been over broad, Dr. Tobias's report was still more consistent with the medical record than that of Dr. Taylor.  Dr. Tobias accounted for Ms. Wilson's amitriptyline prescription, AR at 384, but Dr. Tobias also learned that Ms. Wilson denied any history of mental health counseling or psychiatric treatment.  Id. at 383.  Dr. Tobias's conclusion, therefore, that Ms. Wilson experienced "mild and transient symptoms of depression," was consistent with Ms. Wilson's mild psychological medical record.  Dr. Taylor's conclusion, on the other hand, that Ms. Wilson suffered, inter alia, from major depressive disorder, personality disorder NOS, and a generalized anxiety disorder, was inconsistent with what Ms. Wilson admited was a scant record of mental health treatment.  See Plaintiff's Reply Brief in Opposition to Defendant's Cross-Mot for Summ. J. (dkt. 19) at 4 ("Wilson Reply").

Second, the ALJ noted that despite the significant evidence of Ms. Wilson's "ongoing substance abuse," Dr. Taylor presented no counter evidence to support his conclusion that her substance abuse was "secondary to her severe psychopathology."  Id. at 22.  Moreover, Dr. Taylor failed to describe the degree to which Ms. Wilson's severe psychopathology would persist absent her abuse; thus, the ALJ could not determine if her symptoms would be "severe," or if they would affect her ability to work.  Id.  Dr. Taylor, instead, relied

[5] Ms. Wilson asserts that her "Elavil" prescription was to help with her depression and stress.  Wilson MSJ at 7, 11.  The record is unclear as to the purpose of the Elavil prescription.  AB at 446.  The prescription coincided with a note on Ms. Wilson's record stating "stress," but that is all.  Id.

[6] Ms. Wilson states that a "treating source statement . . . confirms 'depression.'"  Wilson Reply at 4.  The only documented use of the word depression by Ms. Reynolds, the quoted treating source, was in an HIV questionnaire, see AR at 232, however, Ms. Wilson's medical records never reference depression.

United States District Court
For the Northern District of California

1
2
3
4
5

heavily on the subjective symptoms reported by Ms. Wilson, which Dr. Taylor "seemed to accept, uncritically, as true . . . ." Id. at 23.  The ALJ, however, noted that "inasmuch as [Ms. Wilson] has not been clean and sober for any relevant period of time, any opinion about how she functions in the absence of substance abuse is pure speculation."[7] Id. at 22.

6
7
8
9
10
11
12
13
14

      Ms. Wilson, in her reply, attempted to distinguish Dr. Taylor's examination from Dr. Tobias's examination by noting that Dr. Taylor, notwithstanding his reliance on Ms. Wilson's subjective symptoms, also conducted a range of objective tests.  Wilson Reply at 5; AR at 464-71.  Dr. Tobias, however, also conducted a similar litany of objective tests.  AR at 384-85.  Hence, when faced with contesting opinions, as long as the ALJ based his conclusion on substantial evidence, he may properly give greater weight to one physician's findings over another's.

15
16
17
18
19
20
21

      The ALJ did not err in according greater weight to Dr. Tobias's opinion, because the ALJ provided specific and legitimate reasons based on substantial evidence for doing so.  Thus, per Dr. Tobias's medical conclusions, the ALJ properly found that Ms. Wilson did not carry her burden to establish that absent substance abuse, her mental impairments would either be severe under step two or meet the requirements of a listing under step three.[8]

22
23
24
25

      [7] An error is harmless if the ALJ's decision would still be valid despite the error.  Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008).  The ALJ accounted for Ms. Wilson's credibility in his decision to give greater weight to Dr. Tobias's medical opinion; however, because the ALJ's decision regarding the materiality of Ms. Wilson's substance abuse was supported by specific and legitimate reasons, the ALJ's error in determining Ms. Wilson's credibility was harmless.

26
27
28

      [8] Ms. Wilson also argues that the ALJ erred in finding the record insufficient to show a severe mental impairment.  Wilson MSJ at 11.  For the same reasons why the Court holds that the ALJ did not err when it accorded more weight to Dr. Tobias's opinion, i.e. it was more consistent with Ms. Wilson's longitudinal medical record, and Dr. Taylor did not account for Ms. Wilson's substance abuse, the ALJ did not err in finding that without substance abuse, Ms. Wilson's mental impairments were not "severe." AR at 21.

United States District Court
For the Northern District of California

1   Therefore, the Court AFFIRMS this portion of the ALJ's decision, and GRANTS the

2   Commissioner's partial-motion of summary judgment in part.

3

4

5   **C.     The ALJ Erred in Failing to Consider the Combined Effect of Both Ms.
           Wilson's Mental and Physical Impairments.**

6

7        The ALJ erred as a matter of law when he explicitly considered Ms. Wilson's physical

8   and mental impairments independently.  AR at 21 ("The claimant has not proven that,

9   without substance abuse[] . . . she would continue to have a severe mental impairment or

10  combination of impairments.  The physical impairments are independent of the mental

11  impairments and would continue to be severe.").[9]  20 C.F.R. § 416.923 requires the

12  consideration of "the combined effected of all of [the claimant's] impairments without regard

13  to whether any such impairment, if considered separately, would be of sufficient severity."

14  The Commissioner argued that because the ALJ found that without substance abuse, Ms.

15  Wilson's mental impairments "could not be a basis for her disability," the ALJ correctly did

16  not consider them in combination with her physical impairments.  Opp'n at 10.  Not so.  As

17

18

19  Ms. Wilson pointed out, while her mental impairments alone, absent substance abuse, are not

20

21

22        [9] Based on substantial evidence, the ALJ found that Ms. Wilson's physical impairments do not
    meet or medically equal the requirements of a listed impairment.  AR at 24; see 20 C.F.R. § 404,
23  Subpart P, App'x 1 (listing of impairments).  Ms. Wilson's major physical impairments are generally
    right hip pain and lower back pain.  AR at 23-24.  Both impairments are categorized under the
24  musculoskeletal system.  20 C.F.R. § 404, Subpart P, App'x 1 at 1.00.  Loss of function, for the
    purposes of the listing, is defined as the "inability to ambulate effectively on a sustained basis for any
25  reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any
    reason."  Id. § 404, Subpart P, App'x 1 at 1.00(B)(2)(a).  "Ambulate effectively" is defined as an
26  extreme limitation on the ability to walk, meaning the claimant has such insufficient lower extremity
    functioning that they cannot ambulate independently without a hand-held assistance device.  Id. § 404,
27  Subpart P, App'x 1 at 1.00(B)(2)(b)(1).
         Here, the ALJ "carefully considered" both regulation sections (1.02 and 1.04) dealing with Ms.
28  Wilson's impairments, and found that the "evidence does not show that ambulation is limited such that
    the impairments meet or medically equal the requirements of a Listing."  AR at 23-24.  The ALJ based
    his finding on substantial evidence, therefore, the ALJ did not err.

severe enough to be disabling, if they are considered in conjunction with Ms. Wilson's severe physical impairments—AIDS, cervical disc stenosis, lumbar degenerative disc disease, mild osteoarthritis of the right hip, obesity—the combination might meet the definition of a disability.  Wilson MSJ at 10.  By failing to consider them together, the ALJ committed legal error.[10]  See, e.g., Burrow v. Barnhart, 224 F. App'x 613, 615 (9th Cir. 2007) (holding that the ALJ erred when it considered the claimant's physical and mental impairments separately at step two); Johnson v. Astrue, 303 F. App'x 543, 546 (9th Cir. 2008) (concluding that the ALJ did not err, because the ALJ "undertook the required analysis by considering the combined effects of impairments, including non-severe ones").

Therefore, the Court REMANDS this portion of the ALJ's decision for further proceedings consistent with this section.

**D.    By Initially Finding Ms. Wilson Not Credible, the ALJ's Residual Functional Capacity Determination Was in Error.**

In making his RFC finding, the ALJ considered all symptoms and medical opinions in the record.  AR at 24.  When considering Ms. Wilson's subjective symptoms, especially self-reported pain, ALJs follow a two-step process.  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that reasonably could be expected to produce the claimant's pain or other symptoms.  AR at 25.  Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

---

[10] The error was not harmless.  See Carmickle, 533 F.3d at 1163.  Although Ms. Wilson's substance abuse legally rendered her mental impairments not a disability, Dr. Tobias's medical opinion did still reflect that Ms. Wilson suffered from "mild and transient symptoms of depression and irritability . . . ."  AR at 385.  Moreover, Ms. Wilson self-reported symptoms of depression, anxiety, and anger.  Id. at 383, 460.  Had the ALJ accounted for these mental impairments alongside Ms. Wilson's physical impairments, his disability decision may have been different.  Therefore, not considering the combined effect of Ms. Wilson's mental and physical impairments was not harmless error.

United States District Court
For the Northern District of California

determine how they effect the claimant's ability to work.  Id.  If the ALJ finds that the claims of limiting effect or pain are not substantiated by objective medical evidence, the ALJ looks to the claimant's credibility.  Id.  The ALJ found the first step met, stating that "if [Ms. Wilson] ceased substance abuse, [her] medically determinable impairments could be expected to produce some alleged symptoms . . . ."  Id. at 26.  The ALJ, however, found that Ms. Wilson did not meet the second step because her "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not credible . . . ."  Id.  He based his conclusion first on medical evidence, and second on Ms. Wilson's personal credibility.  Id. at 26, 29.   Although the ALJ's medical findings were properly based on substantial evidence, his error in evaluating Ms. Wilson's credibility was not harmless as to his ultimate RFC determination.

## 1.    The ALJ Properly Accorded Less Weight to Ms. Reynolds's Medical Opinion

Ms. Wilson argues that the ALJ erred when he accorded greater weight to Dr. Vu (non-examining physician) and Dr. Seu's (examining physician) medical opinion than Dr. Edelstein (non-examining physician) and Ms. Reynolds's (examining physician's assistant) medical opinion.  Wilson MSJ at 16.  Ms. Wilson is incorrect.

Physicians are acceptable medical sources, 20 C.F.R. § 404.1513(a), and among physicians, as previously discussed, there are three types: treating, examining, non-examining, Lester, 81 F.3d at 830.  In addition, the regulations categorize physician's assistants as "other sources."  20 C.F.R. § 404.1513(d).  Medical sources are owed greater deference than "other sources," Molina, 674 F.3d at 1111, and treating physicians are owed

United States District Court
For the Northern District of California

greater deference than examining physicians who are owed greater deference than non-examining physicians, <u>Lester</u>, 81 F.3d at 830.

Ms. Wilson references Ms. Reynolds as a treating <u>source</u>, which is accurate; however, she also argues that Ms. Reynolds's opinion is owed the weight of a treating physician. Wilson MSJ at 16.  Not so.  While Dr. Edelstein co-signed Ms. Reynolds's narrative report, Ms. Wilson herself testified that she was treated by Ms. Reynolds and no other evidence indicated that Ms. Wilson was ever examined by Dr. Edelstein.  AR at 28.  Dr. Edelstein, therefore, is a non-examining physician, and Ms. Reynolds is an "other source."  On the other hand, even though Dr. Vu was a non-examining physician, he relied upon Dr. Seu's opinion, who was an examining physician.  Thus, under the hierarchy of medical opinions, the ALJ did not err when he gave Ms. Reynolds's opinion "careful consideration," but ultimately afforded Dr. Vu and Dr. Seu's medical opinions greater weight.[11]  AR at 28. Therefore, the Court AFFIRMS this portion of the ALJ's decision, and GRANTS the Commissioner's cross-motion for summary judgment in part.

## 2.      The ALJ's Improper Credibility Finding Prejudiced His RFC Finding

Because the ALJ found that Ms. Wilson's self-reported symptoms and pain did not align with Dr. Vu's medical opinion, the ALJ then weighed Ms. Reynold's credibility.  As discussed in <u>supra</u> Part III.A, the ALJ erred in finding Ms. Wilson not credible.  Thus, the

---

[11] Moreover, the ALJ, after extensively discussing the findings of Dr. Austin, Dr. Seu, Dr. Vu, and Ms. Reynolds, concluded that Dr. Vu and Dr. Seu's opinion was the most consistent with the longitudinal medical record.  AR at 28.  Ms. Reynolds's opinion, on the contrary, was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with other substantial evidence in the record."  <u>Id.</u> at 28-29.

United States District Court
For the Northern District of California

ALJ disregarded Ms. Wilson's subjective symptoms and pain,[12] stating "I do not find the [Ms. Wilson's] own testimony of pain to be fully credible." AR at 29. However, in assessing an individual's RFC, the ALJ "must consider [the claimant's] symptoms (such as pain)." Perry v. Astrue, No. 09-4908, 2011 WL 3903121 (N.D. Cal. Sept. 6, 2011); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting that an ALJ is required to consider a claimant's subjective symptoms in determining severity). Had the ALJ found Ms. Wilson credible, the ALJ's RFC determination would have considered her self-reported symptoms and pain. While the Court cannot speculate whether the ALJ's RFC finding would have been different, because the ALJ's RFC determination factored in Ms. Wilson's credibility, the error was not harmless. Therefore, the Court REMANDS this portion of the ALJ's decision for further proceedings consistent with this section.[13]

## IV.    CONCLUSION

For the foregoing reasons, the Court:

(1)    GRANTS the Commissioner's cross-motion for summary judgment as to the following:

    (a)    The ALJ finding Ms. Wilson's substance abuse a contributing factor material to the determination of her disability as to her mental impairments.

    (b)    The ALJ according greater weight to Dr. Vu and Dr. Seu's medical opinion than Dr. Edelstein and Ms. Reynolds's medical opinion.

(2)    REMANDS the case for further proceedings in accordance with this Order as to the following errors:

---

[12] Ms. Wilson's subjective symptoms and pain include, inter alia, chronic pain in her back and leg, the ability to stand for only thirty minutes and then needing a fifteen minute break, the ability to walk for only ten to fifteen minutes, the inability to sit for more than two to three hours, and feeling drowsy. AR at 26.

[13] Because the Court holds that the ALJ erred at the fourth step in the disability analysis, the Court does not reach the propriety of the ALJ's alternative fifth step finding.

|     |     |                                                                                                       |
| --- | --- | ----------------------------------------------------------------------------------------------------- |
|     | (a) | The ALJ finding Ms. Wilson not credible.                                                              |
|     | (b) | The ALJ failing to consider the combined effect of Ms. Wilson's mental and physical impairments.      |
|     | (c) | The ALJ's RFC determination.                                                                          |

**IT IS SO ORDERED.**

Dated: March 19, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE